134203 Philip Cordell v. Glenn McKinney Arguments not to exceed 15 minutes per side Ms. McKay for appellant May it please the court, my name is Megan McKay and I represent Philip Cordell. I'm here today with Mr. David Singleton. I would like to reserve two minutes for rebuttal please. I would like to start first with the District Court's finding in that the video blatantly contradicted what Mr. Cordell claimed happened at the Greene County Jail that day. I want to start there because that is the basis for which the District Court made flawed findings as to whether there are genuine issues of material fact in this case. As to the subjective intent of Officer McKinney, the objective serious physical injury of Mr. Cordell, and lastly qualified immunity. And just to remind me, I mean, why did the District Court think the video refutes that when the video doesn't show the impact? Your Honor, that is what I'm here today to argue as well. I'm just wondering what the court said. I mean, I can kind of rummage through here while you're arguing. To directly address your question as to the District Court's finding that the video blatantly contradicted what Mr. Cordell said, perhaps the District Court was looking at Video 5. As the court is probably well aware of, there are five portions of video in this case because of how the cameras are set up in the jail. And Video 5 does show a time in which Mr. Cordell is placed against the wall by Officer McKinney, and perhaps the District Court judge was looking at Video 5. Whereas in this particular case, we asked this court to look at Video 2. Video 2 is where we see Officer McKinney and Mr. Cordell come into sight of the camera, and they're moving quickly. And then we lose sight of them. At that moment that we don't see is when Mr. Cordell had his head rammed into a wall by Officer McKinney. The video does not show what happened in that moment. Thus, the District Court erred in applying Scott B. Harris in finding that the video was blatantly contradictory to what Mr. Cordell claimed happened. What the video also doesn't show is whether or not Officer McKinney had malicious intent. Mr. Cordell says that based on what had happened in his initial holding cell, an argument occurred between him and Officer McKinney. And Officer McKinney wanted to get even with Mr. Cordell. He had motive for wanting to ram Mr. Cordell's head into a wall. And we have evidence to support that a reasonable jury could find for Mr. Cordell and for this malicious intent. Was Mr. McKinney an experienced employee guard? I do not know the answer to your question, Your Honor. Was he relevant in terms of knowing where the cameras are so that if he did anything he did it off camera? Is that part of your argument or are you stating that for closing argument? Your Honor, I am not arguing that Officer McKinney intentionally moved out of sight of the camera when ramming Mr. Cordell's head into the wall. That is not part of my argument. But it's quite possible, right? It is quite possible, but I am not alleging that he intentionally did so. Because? There are no facts to support that at this time, Your Honor. You, I believe, gave us these pictures that were stills from the videos. And in one of them, it would appear that just before Officer McKinney and your client are going out of camera view, it would appear that Officer McKinney is looking directly at the camera because his eyes look like they're going right to where the camera seems to be. Is that a fair description of the picture, do you think? Yes, Your Honor. Some other facts that we have to support Officer McKinney's malicious intent include testimony by a fellow employee of the Greene County Jail, stating that Officer McKinney pulled Mr. Cordell from the initial holding cell in an aggressive manner. And that's coming from a co-worker who arguably would normally testify in his co-worker's favor. Subsequently to that, we have testimony, again, by that deputy, who said in his testimony that he had to take two steps to keep up with Officer McKinney and Mr. Cordell because he was rushing him down the hallway so quickly. But the most important part of all of the facts that we have to look at and like most favorable to Mr. Cordell is that Officer McKinney's supervisor thought that Officer McKinney was being so aggressive with Mr. Cordell to, he thought he was being so aggressive that it required him to be pulled from the final holding cell and for his position to be taken over by another officer. And a reasonable jury could infer that if Officer McKinney was upset and aggressive at the end of this series of events, he was aggressive and malicious at the time he ran Mr. Cordell's head into the wall and all the way back to the initial holding cell where he aggressively pulled Mr. Cordell from the cell. What about the fact that he double-locked the handcuffs to prevent that tightening? That is a fact in this case. And arguably it is a fact that should lead this court to conclude that this is a case that should go to a jury. It's a fact that a jury could hear and weigh in light of all the other facts that we have to support that Officer McKinney was malicious. That is a job for a jury to determine. Going to the objective standard of the serious physical injury in this case, the district court erred in failing to even look at this prong because again, they had a flawed analysis of whether this video blatantly contradicted what Mr. Cordell said. We would ask this court to look at this issue. When the court looks at the facts most favorable to Mr. Cordell, you will find that there is also a genuine issue, a material fact, as to whether Mr. Cordell suffered a serious physical injury. Some evidence that a jury could hear to conclude that Mr. Cordell suffered this serious physical injury would include the back pain that he now suffers from. It disrupts his life 24 hours a day. And this pain, we have testimony from a doctor who states that this type of pain is what people suffer as a result of the whiplash-style injury that Mr. Cordell was diagnosed with at the Green Memorial Hospital shortly after the incident at the jail. Thus, the district court erred in making a finding, again, of credibility in that Mr. Cordell did not suffer a serious physical injury. Was there some evidence that Mr. Cordell perhaps exaggerated his cut so that he would need stitches? Do I recall someone saying that the cut didn't look very bad in the beginning and then somehow or other maybe he pried it open more? Yes, Your Honor. There is some testimony in the record that Mr. Cordell may have aggravated his injury once he was placed back into a holding cell. However, that raises that there are credibility issues in this case. You have Mr. Cordell's statement that he was bleeding by the time he got to his holding cell. A slight abrasion wouldn't cause that type of result. And then you have Officer McKinney's version and the nurse and the other people at the jail who said that Mr. Cordell aggravated his injury. And those are all facts that a jury could... How long was he in the holding cell? I do not know the answer to that. Was he in handcuffs in the holding cell? Excuse me? In handcuffs? No, Your Honor. Okay. Lastly, to address the qualified immunity issue in this case, again the district court fatally flawed their analysis by concluding that the video blatantly contradicted what Mr. Cordell said happened that day. And at the summary judgment stage, if there is a question, a fact, which could turn... Let me quote McKenna v. Edgell. When the question turns upon which version of the facts one accepts, the jury, not the judge, must determine liability. And that is applicable to this case because we have two versions of what happened. And the video does not discredit one. In fact, it creates more question of fact. And we ask this court to reverse and remand for further proceedings. If I may reserve my remaining time for rebuttal. You may. Thank you. Your Honors, may I proceed? Please. Thank you. Mr. Counsel, may it please the court. The district court awarded summary judgment to Glenn McKinney because there was no evidence that he acted sadistically or maliciously to cause harm to Mr. Cordell. On July 20, 2009, an incident arose in the jail when Mr. Cordell wanted a haircut and was told no. An argument ensued, and whenever inmates get upset in a jail setting, they are removed from the holding cell and taken to an isolated area. This is standard protocol, and Mr. Cordell acknowledged as much in his deposition. He was removed from that cell on the second floor and taken up to a third floor detention area. During the course of removing him from that area to the upstairs detention cell, McKinney moved at a brisk pace. And as the testimony indicates, this is a technique that correction officers use to prevent a response from inmates. According to the video, there were several other jail personnel following. That is correct. And the video would suggest that Mr. Cordell was the only inmate in the area. That is incorrect. Okay, does the video show other inmates? When you watch the video, they take Mr. Cordell from a cell holding area on the second floor.  When they bring him around and to the stairwell to take him up to the third level, in those hallways it's just Cordell, McKinney, and the other correction officers and the nurse following. So when they're taking him down that hallway, it's Mr. Cordell front and line. There's nobody else in front of him. McKinney and then the other officers that follow. Now, I mean, Mr. Cordell, as I understand it, testified that he was being moved not only briskly but fast enough to create some kind of discomfort in his shoulders. And according to him, it was this kind of extra speed that causes him to turn around and, I guess, inquire about, you know, why are you running me so fast? At this stage of the case, why shouldn't we credit that testimony? Your Honor, because I don't think my understanding of the testimony is as such. The officers testified they moved him fast, which is a technique they use to keep these individuals off balance so that there is no aggressive response. They go up to the third floor and up the steps to the third floor. There are no cameras. It is an isolated area, and if an officer was going to act maliciously or sadistically, that would have been his opportunity. And these officers use these hallways every day, and they know where these cameras are. Do they have them in this hold as they're going up the stairs? There's no testimony as to how he was being held up the steps. I can only assume from representing police officers that he did have a hold of him in some manner. Is there a wall on the stairway? Is there? Excuse me? A wall on the stairway. There are several walls on the stairway, Your Honor, on both the left and right and as you reach a landing area. So they get him out, and they do walk him fast, and they are holding him from behind. But the complaint and the testimony, and this is getting to what the district court said there was no evidence of, the complaint and the testimony was that McKinney had him raising his arms so high that he was almost parallel with the floor and created almost like a battering ram into the wall. At which point? During the moment of impact or the whole time? Taking him down that hallway towards the wall. I mean, if you look at the complaint and you read the testimony, that's what was alleged. Where's the blood splatters? Excuse me? The blood on the wall, high or low? I don't know, Your Honor. There was no testimony or evidence as to where the blood was actually on the wall. But there was blood on the wall? I don't recall that evidence. I mean, it looks like the nurse is pointing to the wall, sort of. I mean, sort of like she's saying, clean that up. I mean, there's no audio. At which point, Your Honor? After the impact and everybody else goes off, and she sort of lingers in the camera vision, and she points to the wall, talking to somebody off camera. But this is the point in the video where they get him to the ultimate detention facility where he's going to be isolated? I think so. I mean, she just lingers on the camera after everyone else departs. My understanding is there's no question, there's no question in this case that he was put up against a wall. There's no question in this case that he suffered an abrasion to his face. That is not being disputed. And when they get him to the ultimate area where he is going to be put until he calms down, they do put him up against a wall there, gently and calmly at that point. And I'm sure his face may have made contact with the wall, and that may have been what the nurse had been pointing out. The issue in this case is when he's being led down that intake hallway, that's I believe on camera 2, video 2, which is depicted in the pictures that were submitted last night, is whether or not the officer acted for purposes of maintaining order and discipline at that time or sadistically and maliciously to cause harm. And under the Eighth Amendment, it's a two-pronged test, both subjective and objective. Under the subjective test, we look and see what were the officer's motivations, and how do we determine that? Well, we look at the need to use force, the relationship between that need and the amount of force that was actually used, and the extent of the injury. In this case, the only time force was actually used is when Mr. Cordell attempted to turn and face the officer. All the officers agreed that they are trained that this is a sign of aggression, and they're trained to either push against that type of maneuver or to take the individual to the ground, which is exactly what McKinney did. No other force was used before or after that moment. McKinney, according to Cordell, McKinney rammed Cordell's head against the wall like a battering ram and caused an injury that required stitches and that produced whiplash, long-term injuries. So why isn't that a fact question that means that summary judgment was not appropriate? Because there's no evidence that he was rammed in the manner described by Cordell. The evidence we have is that he was put against the wall in the manner described by McKinney. But can't Cordell provide evidence in the form of his own testimony as to what happened that constitutes evidence? Not when we have a video that shows otherwise. Well, looking at the pictures, why are the pictures not supportive of Cordell and not really dismissive of McKinney's argument? Because where these cameras are situated is in the corner right on the wall. The wall is right below here. There is not an extended five, six feet beyond this. This is the end of the wall. And there's no evidence that McKinney raised Cordell in the manner in which he described. Well, I don't think it's the raising part. I think it's the force of impact part that really matters to the Eighth Amendment determination. And I guess the problem you have is twofold. Number one, we have Cordell's testimony, which I think contrary to some of the things the District Court said we should credit probably. And number two, we just can't see how severe that impact was on the video because it's not shown. In response to that, I have two responses. Sure, yeah. One is, again, I go back to the fact that it's their burden to prove. It's their burden to prove the case. My burden on summary judgment is to show that there's no genuine issue of material fact. And what I have is a video that shows the manner in which Mr. Cordell was negotiated or moved down this hall. And it doesn't corroborate his account of the events. The second thing is we have to look at, again, the need versus the amount of force used. The need is he turned to face the officer. That's a sign of aggression. The force used is in line with what they're trained to do, which is to push against. And they put him up against the wall. Not like a battering ram, against. Once they were able to regain control of him, they continued to move him to where his ultimate spot was going to be in that isolated detention room. There's no other indication of any force. The question is, did McKinney act maliciously and sadistically to cause harm? Presumably, would you agree that even in a case where his training says to him, respond with some sort of force, even in that kind of case, there could be evidence that the force was sufficiently extreme that he actually acted maliciously with respect to the degree of force that he chose to apply? Is that, I mean, theoretically a possibility? If I understand your question, Your Honor, I think what would have to be established there is something more than de minimis force, something more than de minimis injury. But didn't we have that here? I mean, he got five stitches. He got the whiplash diagnosis at the hospital. I know that some of the witnesses on your side say he aggravated his own injury in the isolation cell, but he says he didn't. So I think we have to take his testimony unless you explain to me why not. I mean, why isn't that force, five stitches, enough to say that this was a case where he just overdid it? I think we look at the cases that I've cited in my brief that talk about cuts and scrapes are de minimis. Cuts and scrapes are de minimis injuries which support de minimis use of force. Okay, but scrapes we don't get five stitches for. Do we have a five-stitches case? I mean, maybe we do. Seriously. I don't know, Your Honor. That's a fair point. But I go by what the courts say, and that cuts and scrapes. What were the damages in Hudson, the Supreme Court case? I don't recall off the top of my head, Your Honor. I don't. I don't recall what the damages were to the inmate in Hudson. How do you deal with Nurse Jordan's testimony that not only was there blood on the wall, there were droplets of blood on the floor? You don't get that from a scrape, do you? Well, you'd get that from a cut. We don't dispute there was a cut. We don't dispute that he was bleeding. But the question is, was that done maliciously and sadistically? Or was it done by the officer pursuant to what he thought was a mistake? How can we possibly answer that question? Isn't that a fact question for the jury? No. Okay. What do you do with the fact that the other officers forced Officer McKinney to go away from Cordell after this event took place and thought that he was acting overly aggressively? I believe the way it was described in the testimony of the officers is when you're involved in situations like this, there's a national tendency for officers to get excited. I don't want that to imply that they're out to hurt anybody or do anything, but they are in a prison facility, they're around these people all day long, and they are concerned for their safety. And when incidents like this happen, they do get amped up a little bit. Any evidence in the record about what his record was? Officer McKinney? Yeah. Was he disciplined in this matter? He was disciplined in this, yes, for his unprofessional conduct after the fact. But he wasn't going to be disciplined before the fact. For what he was doing in the holding cell when they asked him to step outside. So the discipline was not for the event in question, but was for what he was doing afterwards? He was not disciplined for using excessive force, no. What was the discipline for? Unprofessional conduct. Where? During the course of being in that room and his emotions getting the best of him. Profanity sort of exchange that they had? At the beginning. Oh, the profanity before the event that Cordell is complaining about. Let me take a step back, Your Honor. Mr. Cordell wanted a haircut and was told no, and there was an exchange of profanities. He's also a bad guy because he's in prison, but how is that relevant? Well, I think it's relevant if you consider what he was in prison for. I don't want to know what he was in prison for. Well, I think that's relevant to the officers, Your Honor. Somebody who's in prison for involuntary manslaughter may be perceived different to somebody who's there for shoplifting in the eyes of an officer. Involuntary manslaughter? That's correct. Go on. There was some exchange at the beginning of this. Some obscenities were uttered by both sides, and that's when he was removed. Well, if he got worked up enough that he was reprimanded for it, isn't that evidence that potentially could allow a jury to find that he acted sadistically a few minutes later? A few minutes before, you mean? He was worked up a few minutes before, undisputed, right? Reprimanded for that. Reprimanded for things that were going on. Right. Yeah, he's worked up, and he has this exchange. As you said, he gets emotional. Isn't that evidence that a jury could consider as relevant to whether he acted sadistically? Not in light of everything that occurred up until the point when force was used. Again, he's taken... A matter of law that has no tendency to support a finding that he acts sadistically a few minutes later. I mean, he's not getting reprimanded every 10 minutes. This is a fairly unusual event, presumably. And I guess it's a coincidence that three minutes later he does something that might be sadistic. That's the issue before us. Your Honor, I guess I don't quite understand the question. He was removed from the cell, taken up to the third floor, use of force. He was taken to a holding facility where he was put, and the officer was asked to step outside. Up until the point when force was used, there's no evidence of any malicious conduct on the part of the jury. He's reprimanded for being too emotional before this application of force, correct? Or am I mistaken? I don't believe that's the case, Your Honor. What is the reprimand for? I'm sorry, then I've been... What's it for, then? It's for what occurred when he finally got to the third floor. When you're talking about him and the officer was asked to step outside. That's my understanding. That Cordell is complaining about. Sorry about that. No, I just want to make sure we're all on the same page. I didn't think that was coming in, but I thought you had just said that a minute ago. We need to get that clear. No, no, I'm sorry. If I misled you, Your Honor, I'm sorry. No, that's all right. No, that's for what happened there. Okay. Another question that I have is, are there any other excessive force suits involving Deputy McKinney? There is another one that he is named as a party in, but was not the individual. My understanding, and I'm not involved in that case, but he was not the individual who was involved in any use of force. The plaintiff in that case named all the deputies that were on staff at that time. And my understanding is that case has been resolved and it's done. But I don't know any of the particular facts. Was that the Burgess v. Fisher case, or is that another case? The Burgess case. That's correct, Your Honor. I don't have any understanding of the facts, other than the fact that he was on call or on shift at the time, and it had to do with a deputy and Mr. Burgess involved in what they refer to as a shakedown room when somebody is brought in and what occurred in there. That's my only knowledge of that case. Thank you. Are there any other questions from the judges? Thank you very much. Your red light is on, so thank you. Your Honors, it is our understanding that the citation that Officer McKinney received from the Greene County Jail is not just solely for the activity at the final holding cell. It is our opinion that it encompasses everything. And as a matter of fact, it is something that a jury could use to infer, even if it does solely apply to the last holding cell incident, a jury member could infer that just minutes before, he had that same aggressive, agitated state and causing him to act maliciously with Mr. Cordell. Is the citation itself in the record in front of us? No, Your Honor. The citation itself is not in the record. However, it's testified to in the depositions. Would you agree that in light of Officer McKinney's training and in light of the undisputed fact that Mr. Cordell does turn around, that Officer McKinney was entitled to apply some degree of force at that moment? Yes, Your Honor. I would agree with you that he is entitled to apply some degree of force. However, it's a question of fact as to how much would then push him over the level of qualifying him as acting maliciously and sadistically, mainly because we see the exemplar of how Officer McKinney could have put Mr. Cordell against the wall. In Video 5, he places him against the wall. He does not force his shoulders down and ram his head into the wall as Mr. Cordell claims happened in Video 2. It's just another fact that the jury could reasonably conclude that Officer McKinney acted maliciously. So that's the key thing here, I guess, in your view is that he forces Cordell to lead with his head rather than some other move that sort of just smushes his chest maybe up against the wall. Yes, Your Honor. That's correct. And it is shown when you go back and look at the videos, you will see that Officer McKinney has a hold of his handcuffs with the left hand and has his right hand on Mr. Cordell's right shoulder. It is plausible that he pushes his shoulders down to then ram his head into the wall, then causing the blood on the wall, the blood on the ground, and the whiplash-style injury that Mr. Cordell suffers from. Unless there are no further questions, I would ask this Court to reverse the order of summary judgment and remain for further proceedings. If there are further questions, you're not going to ask us that? Unless there are no further questions. She would be happy to answer your further questions. I would be happy to answer your questions. We thank you both for your argument. And we particularly want to thank Ms. McKay as a law student for her excellent work in representing her client. You've done a very fine job. And we thank Mr. McKinney's counsel as well. I'm not meaning to praise one over the other, but I did feel that recognition of a law student's exemplary work was appropriate. So thank you both for your argument, and the case will be submitted.